IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

SARA KHATTAB, *et al.*,           )
                 Plaintiffs,       )
                                   )
        v.                         )          Civil Action No. 3:23CV737 (RCY)
                                   )
MARK JANOWSKI, *et al.*,          )
                 Defendants.       )
_____)

### MEMORANDUM OPINION

This matter comes before the Court on Defendant City of Richmond's (the "City") Motion to Dismiss for Failure to State a Claim ("Motion to Dismiss," ECF No. 4). The motion has been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated herein, the Court will grant the City's Motion to Dismiss (ECF No. 4).

### I. BACKGROUND

When deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court "accept[s] as true the plaintiff's well-pleaded allegations and views all facts and draws all reasonable inferences in the light most favorable to plaintiff." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Such a standard, however, does not require accepting any unreasonable inferences or plaintiff's legal conclusions. *Id.* Applying these standards, the Court construes the facts in the Complaint as follows.

On May 30, 2020, numerous peaceful demonstrations protesting police brutality took place throughout the United States. Compl. ¶ 18, ECF No. 1. One such protest took place in Richmond, Virginia. *Id.* Plaintiffs Sara Khattab ("Ms. Khattab") and Kaiya Crump ("Ms. Crump") (together,

"Plaintiffs"), "who were barely adults at the time," participated in the Richmond protest along with a juvenile friend.  *Id.* ¶ 19.  Ms. Khattab drove the three of them to Broad Street that evening and parked in a space on the street.  *Id.* ¶ 20.  Eventually, the "intensity of the protests increased."  *Id.* ¶ 21.  Plaintiffs and their juvenile friend became uncomfortable and elected to return to Ms. Khattab's vehicle to drive home.  *Id.*  Ms. Khattab drove her vehicle with Ms. Crump in the passenger seat and their juvenile friend in the backseat.  *Id.* ¶ 24.

Ms. Khattab maneuvered her vehicle onto Broad Street, but exiting the area quickly became difficult due to the presence of police and protesters in the street.  *Id.* ¶ 22.  Ms. Khattab eventually navigated her vehicle over to the far-left lane of eastbound Broad Street, pulling up behind other vehicles at a stoplight.  *Id.* ¶ 23.  While at the stoplight, Plaintiffs and their friend noticed a "heavy police presence" on the sidewalk.  *Id.* ¶¶ 25–26.  Plaintiffs' juvenile friend then asked Ms. Crump to roll down the passenger window.  *Id.* ¶ 25.  Ms. Crump obliged, and "[t]he juvenile . . . leaned forward and yelled out of the passenger window 'Fuck Twelve' in the direction of the City of Richmond police officers on the sidewalk."[1]  *Id.* ¶ 26.  Numerous officers were subsequently heard encouraging Defendants Mark Janowski ("Officer Janowski") and Christopher Brown ("Officer Brown") to "gas" Plaintiffs and their friend in response to the juvenile's comment.  *Id.* ¶ 28.

Ostensibly in response to the other officers' urging, Officers Janowski and Brown "crossed three lanes of Broad Street" to reach Ms. Khattab's vehicle, which was still stopped in the far-left lane.  *Id.* ¶ 29.  Upon reaching the vehicle, Officer Janowski fired a fogger of Oleoresin Capsicum spray ("O.C. spray" or "pepper spray") into the vehicle's open window, "despite being trained specifically not to do so."  *Id.* ¶ 30.  The fog immediately filled the vehicle, causing Plaintiffs and their friend to cough "and experience[] severe burning of their eyes, nose, throat, and skin."  *Id.*

---

[1] Plaintiffs note that "'Twelve' is a slang term used to refer to police officers and is in popular use in the United States."  Compl. ¶ 27.

¶ 31.  Officers Janowski and Brown could be heard laughing with one another as Plaintiffs and their friend "coughed, cried, and gasped." *Id.* ¶ 32.

Ms. Khattab's initial attempt to drive away was hampered by her inability to breathe or see, as the O.C. spray had "completely obscured the windshield." *Id.* ¶ 33.  Despite struggling to breathe and still burning from the O.C. spray, Plaintiffs were soon able to wash enough of the windshield for Ms. Khattab to "see enough to get the vehicle back to her residence." *Id.* ¶ 34. Plaintiffs and their friend then attempted to shower to remove the burning residue from the O.C. spray; however, unbeknownst to them, "water does not mitigate the effects of [the spray, but] instead simply spreads it." *Id.* ¶¶ 35–36.  As a result, the three experienced even more severe and widespread burning. *Id.* ¶ 36.  The lingering effects of the O.C. spray went on to last for days, "making showering painful and preventing one of [them] from swimming in the ocean on vacation the following week." *Id.* ¶ 38.

At some point after the events of May 30, Officers Janowski and Brown were indicted by a grand jury in the City of Richmond on misdemeanor assault and battery charges. *Id.* ¶ 39.  These charges were later dismissed as part of a Virginia Center for Restorative Justice program in July 2022. *Id.* ¶ 40.  As part of that same program, Plaintiffs were "invited to meet with Defendants Janowski and Brown." *Id.* ¶ 41.  Plaintiffs declined to attend "out of fear and discomfort." *Id.* ¶ 41.  Plaintiffs were particularly uncomfortable with the fact that Officers Janowski and Brown would have their charges dismissed and "could potentially remain City of Richmond police officers." *Id.* ¶ 42.  Summarizing their claim for relief, Plaintiffs aver that they "joined their peers in nationwide protests of police brutality and found themselves brutalized and will likely experience trauma and distrust of law enforcement for the rest of their lives." *Id.* ¶ 44.

## II. PROCEDURAL HISTORY

Plaintiffs filed their fifteen-count complaint on November 2, 2023, alleging various violations of state and federal law against both the City and Officers Janowski and Brown.  Compl. ¶¶ 1–4, 45–148.  On November 29, 2023, the City filed the instant Motion to Dismiss and Memorandum in Support thereof.  ECF Nos. 4, 5.  Plaintiffs filed their Memorandum in Opposition to the City's Motion to Dismiss on December 14, 2023.  ECF No. 9.  The City then filed its Reply on December 20, 2023.  ECF No. 11.  Accordingly, this matter is ripe for review.

## III. LEGAL STANDARD

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)).  Dismissals under Rule 12(b)(6) are generally disfavored by the courts because of their res judicata effect.  *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1471 (4th Cir. 1991).  Federal Rule of Civil Procedure 8 only requires that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," "detailed factual allegations" are not required in order to satisfy the pleading requirement of Federal Rule 8(a)(2).  *Id.* (citations omitted).  "[A] motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief."  *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130,

1134 (4th Cir. 1993).  The plaintiff's well-pleaded allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff.  *Id.* (citations omitted); *see also Martin*, 980 F.2d at 952.

Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Labels and conclusions," a "formulaic recitation of the elements," and "naked assertions" without factual enhancement are insufficient. *Id.*

## IV. DISCUSSION

Plaintiffs set forth fifteen counts in their Complaint, eight of which are directed at the City. *See* Compl. ¶¶ 45–148.  Of these eight counts, three sound in federal law, *see id.* ¶¶ 55–61 (Count II), 67–73 (Count IV), 81–88[2] (Count VI), and five sound in Virginia state tort law, *see id.* ¶¶ 99–101 (Count VIII), 110–12 (Count X), 113–23 (Count XI), 135–37 (Count XIII), 146–48 (Count XV).  The City has moved to dismiss all eight of these counts.  Mot. Dismiss 1[3], ECF No. 4; *see* Def.'s Mem. Supp. Mot. Dismiss ("Mem. Supp.") 1, 4–10, ECF No. 5.  Regarding the federal counts, the City contends that Plaintiffs have failed to satisfy the *Monell* pleading standard.  Mem.

---

[2] While the title Count VI suggests it is directed against "Defendants Janowski and Brown," Compl. ¶¶ 81–88, the substance of the paragraphs therein indicate it is directed at the City.  *See, e.g.,* Compl. ¶ 88 ("The City is liable for the violations of Plaintiffs' First Amendment rights.").

[3] For this and all other filings, the Court utilizes the pagination assigned by the CM/ECF system and not the pagination appearing on the original document.

Supp. 4.  Such a failure, per the City, is fatal to all of Plaintiffs' federal claims.  *See id.* at 4–8.  The City then takes aim at the state law counts, arguing that sovereign immunity bars any such claims.  *See id.* at 8–10.  For the reasons outlined below, the Court agrees with the City and will dismiss all counts brought against it.[4]

## A. Plaintiffs Have Failed to Sufficiently Plead Their *Monell* Claims

Plaintiffs allege that the City violated their First, Fourth, and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983.  Compl. ¶¶ 55–61, 67–73, 81–88.  Plaintiffs' claims—having been levied against a municipality—must satisfy the strictures of the *Monell* doctrine to evade dismissal.

### 1. *Monell* Liability

For the purposes of § 1983, "a municipality is considered a 'person' and thus is subject to suit."  *Hunter v. Town of Mocksville*, 897 F.3d 538, 553 (4th Cir. 2018) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)).  While an underlying constitutional violation is a *necessary* element of municipal liability, it is not sufficient; a municipality cannot "be held liable *solely* because it employs a tortfeasor."  *Monell*, 436 U.S. at 691; *see Hunter*, 897 F.3d at 553.  In other words, municipalities "cannot be held liable under § 1983 on a *respondeat superior* theory."  *Monell*, 436 U.S. at 691; *see Hunter*, 897 F.3d at 553–54.  Instead, liability will attach only where the "execution of a government's *policy or custom*, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible for under § 1983."  *Monell*, 436 U.S. at 694 (emphasis added); *see Hunter*, 897 F.3d at 553–54.

---

[4] Specifically, the Court will dismiss Counts II, IV, VI, VIII, X, XI, XIII, and XV of Plaintiffs' Complaint.

The Fourth Circuit has identified four avenues through which a § 1983 plaintiff may demonstrate the existence of a *Monell* "policy or custom":

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens;" or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999)). Reading the Complaint in the light most favorable to Plaintiffs, they allege the existence of an unconstitutional policy or custom on two theories: (1) failure to properly hire, supervise, or train police officers, and (2) condonation of "persistent and widespread" improper officer conduct. The Court will outline the guiding principles under each theory before then turning to consider whether, in view of such principles, Plaintiffs' allegations pass muster.

### a. Failure to Properly Hire, Supervise, or Train

A municipality's failure to properly hire, supervise, or train may establish § 1983 liability where such failure "amounts to deliberate indifference to the rights of persons with whom the police come into contact," *City of Canton v. Harris*, 489 U.S. 378, 388 (1989), and is the "moving force [behind] the constitutional violation," *id.* at 389. This theory of municipal liability therefore has two components in addition to an underlying constitutional violation: deliberate indifference and causation.

To constitute "deliberate indifference," a failure to train must reflect the municipality's "deliberate" or "conscious" choice. *Id.* at 379. A "deliberate" choice is one in which the municipality had "fair *notice* that subordinates are engaged in constitutional or statutory deprivations" and nevertheless "consciously chose[] a particular course of action in response." *Brown v. Mitchell*, 308 F. Supp. 2d 682, 703 (E.D. Va. 2004); *see Wynn v. City of Richmond*, 2022

WL 2318497, at *10 (E.D. Va. June 28, 2022) (quoting *Brown*, 308 F. Supp. at 703).  In turn, a plaintiff may establish "deliberate indifference" in two ways.  First, they may demonstrate that "policymakers were aware of, and acquiesced in, a pattern of constitutional violations."  *Moody v. City of Newport News*, 93 F. Supp. 3d 516, 538 (E.D. Va. 2015) (citing *Gallimore v. Henrico Cnty. Sch. Bd.*, 38 F. Supp. 3d 721, 7216 (E.D. Va. 2014)).  Alternatively, a plaintiff may show that the municipality has "failed to train its employees on an obvious constitutional duty that particular employees are certain to face."  *Id.* at 538.  This second method is "limited . . . to a 'narrow scope' of constitutional duties."  *Wynn*, 2022 WL 2318497, at *10 (quoting *Tobey v. Napolitano*, 808 F. Supp. 2d 830, 843 (E.D. Va. 2011)).[5]  Under either option, the deliberate indifference element creates a "stringent standard of fault" that a plaintiff cannot plead generally.  *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997); *see Tobey*, 808 F. Supp. 2d at 843.

A plaintiff must also establish a "causal" nexus between the deficient training and the alleged constitutional violation.  *Brown*, 308 F. Supp. 2d ta 694.  Generally, a plaintiff cannot demonstrate the requisite causal connection "by proof of a single incident of unconstitutional activity alone."  *Jordan ex rel. Jordan v. Jackson*, 15 F.3d 333, 341 (4th Cir. 1994).  However, under limited circumstances, a single incident can establish a causal connection where the constitutional duty is so obvious that without the proper training, "the specific violation [was] 'almost bound to happen, sooner or later.'"  *Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987) (quoting *Patzner v. Burkett*, 779 F.2d 1363, 1367 (8th Cir. 1983)).

### b. Condonation of Unconstitutional Practices

A municipality is liable under a condonation theory "if municipal policymakers fail 'to put a stop to[,] or correct[,] a widespread pattern of unconstitutional conduct."  *Owens v. Balt. City*

---

[5] The "paradigmatic example" of an obvious constitutional duty that police officers will face involves the use of deadly force.  *Moody*, 93 F. Supp. 3d at 539.

*State's Att'ys Off.*, 767 F.3d 379, 402 (4th Cir. 2014) (quoting *Spell*, 824 F.2d at 1389). Thus, to sufficiently plead a *Monell* claim under a condonation theory, a plaintiff must allege "'persistent and widespread practices of municipal officials,' the 'duration and frequency' of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their 'deliberate indifference.'" *Id.* at 402 (quoting *Spell*, 824 F.2d at 1386–91 (alterations omitted)). Just as with the other avenues to *Monell* liability, a plaintiff must also identify "a direct causal link" between the "persistent," "widespread" practice, on one hand, and the alleged constitutional deprivation on the other. *City of Canton*, 489 U.S. at 385.

### 2. Plaintiffs' Allegations Are Insufficient Under Either Theory of *Monell* Liability

Applying these guiding legal principles, the Court finds that, under either theory outlined above, Plaintiffs have failed to sufficiently plead that the City embraced a policy or custom of the constitutional violations asserted. Plaintiffs resist this conclusion, but no amount of artful argument can remedy the deficiencies present in the Complaint.

To reiterate, it appears that Plaintiffs rely on failure to train and condonation theories to argue that the City is liable under § 1983. *See* Compl. ¶¶ 13, 28, 40, 42, 57–61, 69–73, 83–88; Mem. Opp'n 4 ("[A] municipality can no longer hide behind *Monell* in multiple circumstances, including failure to properly train officers or through a condoned practice that is persistent or widespread."). The Court thus turns to the Complaint to determine whether Plaintiffs have sufficiently alleged either violation. The following excerpts come from Count II of the Complaint, wherein Plaintiffs allege that the City violated their Fourth Amendment rights:

> 57. The City had a duty to properly hire, train, supervise, and fire, if necessary, its employees in order to protect the public against reasonable dangers which would be likely to occur in the absence of proper hiring, training, supervision, and firing.

58.    The City has a policy, custom, pattern and practice of failing to effectively train, supervise, discipline, and control the personnel its employs as police officers regarding the requisite, appropriate and reasonable use of force and/or excessive force in its interactions with the public[.]

59.    The City has a policy, custom, pattern and practice of violating their duty to properly hire, train, supervise, and fire/suspend police officers, including but not limited to, Defendants Janowski, Brown, and/or any other known or unknown officers or other officers involved in this incident.

60.    The City has a policy, custom, pattern and practice of negligent hiring and failure to train, supervise, fire or suspend the Detention Center personnel involved in this incident, and the ensuing use of force and/or use of excessive force, were state actions and/or inactions which subjected the girls to excessive force.

Compl. ¶¶ 57–60.  These allegations are representative of the general tenor of Plaintiffs' *Monell* allegations in support of both their failure to train and condonation theories.  Indeed, Counts IV and VI—asserting that the City violated Plaintiffs' Fourteenth and First Amendment rights, respectively—follow the same pattern: several paragraphs of boilerplate language alleging that (1) the City has some constitutional duty, and (2) the City has a "policy, custom, pattern and practice" of actions and/or omissions that violate said constitutional duty.  *See* ¶¶ 69–72, 83–86.

A close, generous reading of the remainder of the Complaint reveals—at best—seven more paragraphs containing allegations related to the City's policies or customs:

13.    At all times relevant herein, the City was responsible for the policies, procedures, rules, regulations, and customs set forth and utilized for the supervision of all the City's employees, including but not limited to the [Richmond Police Department's ("RPD")] officers. . . .

28.    City of Richmond Police Officers could be heard encouraging Janowski and Brown to "gas" [Plaintiffs] in response to the[ir friend's] "Fuck Twelve" comment. . . .

32.    Defendants Janowski and Brown could be heard laughing with each other as [Plaintiffs] coughed, cried, and gasped. . . .

10

42.     Plaintiffs . . . were not comfortable that . . . Janowski and Brown would have their charges dismissed and could potentially remain City of Richmond police officers. . . .

51.     City of Richmond personnel, including but not limited to, other officers on scene, knew or had reason to know that a Constitutional violation(s) was being committed by their colleagues against Plaintiffs.

52.     City of Richmond personnel, including but not limited to, other officers on scene, had a reasonable opportunity to prevent the unlawful use of force and/or use of excessive force, yet they failed to protect Plaintiffs.

53.     City of Richmond personnel, including but not limited to, other officers on scene, respective actions and omissions in unlawfully assaulting, fogging, and endangering the Girls and the failure to protect their constitutional rights from the unlawful conduct of other officers, committed unlawful and excessive use of force in violation of the Fourth Amendment.

Compl. ¶¶ 13, 28, 32, 42, 51–53.

Viewing the foregoing allegations in the light most favorable to Plaintiffs, the Court concludes that Plaintiffs have insufficiently pleaded their *Monell* claims against the City. The Court acknowledges that the RPD officers on scene—particularly Officers Janowski and Brown—apparently engaged in highly troubling behavior.   Plaintiffs' allegations against the City nevertheless fall into one of two categories:   (1) legal conclusions of the sort that courts frequently hold cannot survive a motion to dismiss, *see, e.g.*, *Wynn*, 2022 WL 2318497, at *12–13; or (2) factual contentions that fail to establish *Monell* liability on behalf of the City, *see, e.g.*, *id.* at 11–12; *Lee v. City of Richmond*, 2013 WL 1155590, at *7 (E.D. Va. Mar. 19, 2013).   Either way, Plaintiffs' allegations are insufficient to withstand the City's Motion to Dismiss.

Beginning with the former category, Plaintiffs' allegations in paragraphs 57–60, 69–72, and 83–86 are plainly the type of "labels and conclusions and . . . formulaic recitation of the elements of a cause of action" deemed insufficient to save a complaint

11

from dismissal. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *Lee v. City of Richmond* provides useful guidance on this issue. *See Lee*, 2013 WL 1155590. There, the plaintiff, Lee, asserted a failure to train claim against the City. *See id.* at *6–7. In support of this claim, Lee averred "that: (1) the training was inadequate; . . . (2) the inadequate training 'constitute[d] deliberate indifference'; and (3) the 'risk of constitutional injury as a result of such deliberate indifference . . . is very obvious." *Id.* at *7 (internal citations omitted). The court flagged these allegations as the "exact type of 'labels and conclusions and a formulaic recitation of the elements of a cause of action' that *Twombly* says 'will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Plaintiffs' allegations in the paragraphs referenced above are no different. Like Lee, Plaintiffs essentially just recite the elements of a *Monell* cause of action. *See id.* at *6–7. Without more, such vague, conclusory allegations will not suffice to hold the City liable. *Brown v. Cobb*, 2018 WL 3080064, at *3 (E.D. Va. June 21, 2018); *see Lee*, 2013 WL 1155590, at *6–7.

Turning to the remainder of Plaintiffs' allegations, the Court finds that the Complaint lacks sufficient facts to plausibly allege the existence of an unconstitutional policy or custom. In this regard, *Wynn v. City of Richmond* is instructive. *See Wynn*, 2022 WL 2318497. There, the plaintiff, Wynn, brought several *Monell*-based claims against the City after an alarming instance of police misconduct. *Id.* at *1–3. The Court ultimately dismissed all claims against the City, noting that the complaint was "bereft of facts to plausibly allege an improper custom." *Id.* at *12. Rather than pleading specific facts in support of her *Monell* claim, Wynn "merely claim[ed] that [the City] 'employ[ed] and retain[ed] as police officers and other personnel . . . whom the City . . . knew or reasonably should have known had dangerous propensities for abusing their authority and mistreating

citizens.'" *Id.* at *12. However, Wynn failed to include "a single additional allegation to support this contention." *Id.* For instance, Wynn did not "state that [the City] had received several other complaints relating to [the alleged misconduct], nor d[id] she allege even one other instance of similar unconstitutional conduct." *Id.* (citing *Owens*, 767 F.3d at 385, 387; *Moody*, 93 F. Supp. 2d at 543).

The court identified similar deficiencies in Wynn's failure to train claim: "Wynn's [failure to train] allegations . . . are similarly—and fatally—conclusory. . . . Wynn simply states that [RPD's] training policies 'were not adequate.'" *Id.* at *13. The court continued, "to allow a plaintiff to establish municipal liability by merely reciting the theory's elements would be to 'functionally expose the City to *respondeat superior* liability, which has been explicitly foreclosed by *Monell*.'" *Id.* (quoting *Lee*, 2013 WL 1155590, at *7). Ultimately, the court deemed the foregoing deficiencies fatal to Wynn's complaint and dismissed her *Monell* claims against the City. *See id.* at *12–14.

Here, Plaintiffs' Complaint faces the same primary pitfall that doomed Wynn's complaint. That is, Plaintiffs ask the Court to infer from one incident that the City does not adequately train its police officers and/or condones their allegedly unconstitutional behavior. *See id.* at *12–14. Yet, Plaintiffs have failed to allege any specific facts indicating (1) *how* the City failed to train or supervise its officers, (2) that the *City* knew about and acquiesced in a *pattern* of violations, or (3) that the *City's* action or inaction otherwise caused Plaintiffs' injuries. *See id.* (citing *Owens*, 767 F.3d at 403; *Moody*, 93 F. Supp. 3d at 543); *Brown*, 2018 WL 3080064, at *3–4. To be sure, a plaintiff facing a motion to dismiss "need not plead the multiple incidents of constitutional violations that may be necessary at later stages to establish the existence of an official policy or custom

and causation." *Jordan*, 15 F.3d at 341.  However, a plaintiff must plead sufficient facts

to render such a *Monell* claim *plausible*. *Wynn*, 2022 WL 2318497, at *12.  Plaintiffs have

failed to do so here.  On the contrary—to find that Plaintiffs' sparse allegations establish

municipal liability on behalf of the City would be tantamount to exposing the City to

*respondeat superior* liability.  *Wynn*, 2022 WL 2318497, at *13 (citing *Lee*, 2013 WL

1155590, at *7).  *Monell* does not permit such an outcome.  *See Monell*, 436 U.S. at 694;

*City of Canton*, 489 U.S. at 385.

Plaintiffs attempt to evade this conclusion by arguing that the "complicity of every

[RPD] officer on scene" is indicative of the City's "deliberate indifference of the

municipality to train, supervise, and reprimand them otherwise." Mem. Opp'n 4–5.  While

the Court recognizes that the alleged actions of the RPD officers on scene are disconcerting,

Plaintiffs' argument is a nonstarter.  For *Monell* purposes, a plaintiff may establish the

requisite deliberate indifference by demonstrating either (1) that "policymakers were aware

of, and acquiesced in, a pattern of constitutional violations," *Moody*, 93 F. Supp. 3d at 538,

or (2) in limited circumstances, that the municipality "failed to train its employees on an

obvious constitutional duty that particular employees are certain to face," *id.*  Plaintiffs'

allegations fail to demonstrate deliberate indifference via either avenue.

As to the former, there are no allegations indicating that *policymakers* had notice

of and acquiesced in a *pattern* of violations.  *See Owens*, 767 F.3d at 402 (requiring a

plaintiff to demonstrate that policymakers "had actual or constructive knowledge" of the

improper conduct alleged).  Instead, Plaintiffs' allegations concern the actions of rank-and-

file employees on a single day.  Under such circumstances, the Court is unable to hold that

Plaintiffs sufficiently allege a *pattern* of violations, much less that the City and its

policymakers were *aware* of such a pattern of violations.  *See Doe v. Broderick*, 225 F.3d 440, 456 (4th Cir. 2000) (noting that in a failure to train case, "[i]solated, unprecedented incidents . . . are insufficient to create municipal liability"); *City of Okla. City v. Tuttle*, 471 U.S. 808, 830 (1985) (Brennan, J., concurring) (noting that while "a single police officer may grossly, outrageously, and recklessly misbehave in the course of a single incident," municipal liability may only be imposed where there is some showing that "such misbehavior [is] fairly attributable to . . . municipal policies or customs," as opposed to "numerous other factors for which the city may not be responsible[, such as] the police officer's own unbalanced mental state").[6]

Turning to the latter avenue, and assuming that the allegations here relate to the "narrow scope" of constitutional duties to which it is applicable, Plaintiffs simply fail to lodge any non-conclusory allegations concerning the City's purported failure to train.  *See Tobey*, 808 F. Supp. 2d at 843.  In fact, Plaintiffs' only non-conclusory allegation regarding the City's training practices—that Officer Janowski fired O.C. spray into their vehicle "despite being trained specifically *not to do so*," Compl. ¶ 30 (emphasis added)—actively undermines their failure to train claim.  Plaintiffs cannot on one hand allege that the City failed to adequately train its officers and on the other allege that the purported misconduct contravened the training that the City's officers receive.

In sum, Plaintiffs fail to sufficiently allege their *Monell* claims against the City. Plaintiffs have not adduced sufficient facts to demonstrate how the City failed to train its

---

[6] To further clarify, Plaintiffs' position appears to be that the other officers' goading of Janowski and Brown is suggestive of a "persistent and widespread" unconstitutional policy or custom.  *See* Mem. Opp'n 4–5.  However, it is not clear that one instance of this behavior is sufficient to demonstrate that any such policy or custom is "persistent and widespread."  *See Brown*, 2018 WL 3080064, at *3–4; *Wynn*, 2022 WL 2318497, at *11–13  Moreover, even assuming that one instance *is* sufficient, the Complaint's allegations remain insufficient to impute *knowledge of* and *acquiescence in* this policy or custom by the City's *policymakers*.  *See Brown*, 2018 WL 3080064, at 3–4.

officers, that the City knew about and acquiesced in or condoned a pattern of violations, or that the City's action or inaction caused their injuries. Under such circumstances, the Court has no choice but to dismiss Plaintiffs' *Monell* counts against the City.

### B. Plaintiffs' State Law Claims Against the City Are Barred by Sovereign Immunity

In addition to their constitutional claims, Plaintiffs also contend that the City is vicariously liable under Virginia tort law for assault, battery, negligent retention,[7] gross negligence, and willful and wanton conduct. Compl. ¶¶ 99–101, 110–123, 135–37, 146–48. Unfortunately for Plaintiffs, each of these claims is barred by sovereign immunity.

Sovereign immunity shields municipalities from tort liability arising from employees exercising governmental functions. *Niese v. City of Alexandria*, 264 Va. 230, 238 (2002). A function is "governmental" when it is "directly tied to the health, safety, and welfare of the citizens," *Edwards v. City of Portsmouth*, 237 Va. 167, 171 (1989), and "involves 'the exercise of an entity's political, discretionary, or legislative authority,'" *Carter v. Chesterfield Cnty. Health Comm'n*, 259 Va. 588, 591 (2000). Municipalities enjoy immunity for both negligence and intentional torts stemming from governmental functions. *Niese*, 264 Va. at 239–40. The

---

[7] Plaintiffs also assert state law claims against the City for negligent training and supervision. Compl. Count XI. It does not appear that Virginia recognizes such causes of action. *See A.H. ex rel. C.H. v. Church of God in Christ, Inc.*, 297 Va. 604, 630 (2019) (collecting cases for the proposition that Virginia law does not recognize negligent supervision claims); *Johnson v. McCowan*, 549 F. Supp. 3d 469, 476 (W.D. Va. 2021) ("[T]here is no negligent supervision cause of action in Virginia."); *Brown v. Wal-Mart Stores, E., LP*, 2023 WL 8357970, at *3–4 (declining to recognize negligent training and supervision causes of action under Virginia law); *Morgan v. Wal-Mart Stores E., LP*, 2010 WL 4394096, at *4 (E.D. Va. Nov. 1, 2010) ("[T]his Court is not aware of any case from the Supreme Court of Virginia or lower courts that recognizes the distinct tort of negligent training."); *Warner v. Centra Health Inc.*, 503 F. Supp. 3d 479, 500 (W.D. Va. 2020) ("Plaintiff tries to bring a negligence claim based on negligent training and supervision under Virginia common law. However, such a cause of action does not exist under Virginia common law."); *Parrish v. Am. Airlines, Inc.*, 97 Va. Cir. 271, 277 (2017) ("Similarly, the Court is not aware of any authority recognizing negligent training in Virginia, and a number of Virginia courts have declined to recognize negligent training in cases in which the cause of action was proposed.").

This Court likewise declines to recognize a cause of action for either negligent training or negligent supervision, because such causes of action have not been clearly established under Virginia law. The negligent training and supervision portion of Count XI must therefore be dismissed. The remainder of Count XI, along with the rest of Plaintiffs' state law counts, is barred by sovereign immunity for the reasons outlined herein.

maintenance of a police force qualifies as a governmental function, meaning that municipalities enjoy immunity for their police officers' torts in the performance of their duties. *Id.*

The sovereign immunity inquiry in this case ends nearly as soon as it begins. In the Complaint, Plaintiffs aver that "Janowski . . . was at all relevant times an officer in the [RPD] and . . . acting within the scope of his employment." Compl. ¶¶ 14–15. Plaintiffs likewise aver that "Brown . . . was at all relevant times an officer in the [RPD] and . . . acting in the scope of his employment." Compl. ¶¶ 16–17. Taking these allegations as true, Officers Janowski and Brown therefore committed the alleged intentional torts during the performance of their duties as police officers. *See Niese*, 264 Va. at 239–40. Accordingly, sovereign immunity shields the City from liability for their actions. *See id.*; *see also Hales v. City of Newport News*, 2011 WL 4621182, at *4 ("Virginia adheres to the principle that a city's sovereign immunity for torts allegedly committed by police officers during the course of their employment is broad enough to render such city immune from liability for all forms of torts, including intentional torts.").

Plaintiffs attempt to avoid this inevitable conclusion by arguing that "the government function shielded by immunity ended when the City's officers left the sidewalk and crossed multiple lanes of traffic to attack [Plaintiffs]." Mem. Opp'n 7. Plaintiffs apparently fail to recognize the import of such an argument—if Janowski and Brown were not performing a government function on behalf of the City at the time of the incident, the City cannot be held vicariously liable for their actions. *See, e.g., Glenmar Cinestate, Inc. v. Farrell*, 223 Va. 728, 730 (1982); *Brown v. Cobb*, 2018 WL 3080064, at *5 (E.D. Va. June 21, 2018) ("Of course, if [an officer] did not act within the scope of his employment, the [c]ourt cannot hold the City vicariously liable for his actions.").

To summarize, Plaintiffs' state law claims against the City fail no matter how they frame the issue.   At the time of the incident, Janowski and Brown were either (a) performing a governmental function on behalf of the City, triggering the City's sovereign immunity, or (b) *not* performing a government function on behalf of the City, rendering vicarious liability inapplicable.

## V. CONCLUSION

For the foregoing reasons, the City's Motion to Dismiss (ECF No. 4) will be granted.

An appropriate Order shall issue.

Richmond, Virginia
Date: <u>April 30, 2024</u>

_____
Roderick C. Young
United States District Judge